IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2018 Term

_____

No. 17-0641
_____

FILED
April 12, 2018
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

MCELROY COAL COMPANY,
Petitioner

v.

MICHAEL SCHOENE AND PATRICIA SCHOENE,
Respondents

_____

CERTIFIED QUESTIONS ANSWERED

_____

Submitted: January 16, 2018
Filed: April 12, 2018

Rodger L. Puz, Esq.
J.R. Hall, Esq.
Dickie McCamey & Chilcote, P.C.
Pittsburgh, Pennsylvania
Counsel for Petitioner

J. Thomas Lane, Esq.
Carrie J. Lilly, Esq.
Bowles Rice LLP
Charleston, West Virginia
Counsel for Amicus Curiae
The West Virginia Coal Association

James G. Bordas, Jr., Esq.
Jeremy M. McGraw, Esq.
James B. Stoneking, Esq.
Bordas & Bordas, PLLC
Wheeling, West Virginia
Counsel for Respondents

JUSTICE LOUGHRY delivered the Opinion of the Court.

CHIEF JUSTICE WORKMAN concurs in part, dissents in part, and reserves the right to file a separate opinion.

JUSTICE KETCHUM concurs in part, dissents in part, and reserves the right to file a separate opinion.

JUSTICE WALKER concurs in part, dissents in part, and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.      "A landowner who conveys the coal underlying the surface of his land has an absolute property right to subjacent support for the surface in its natural state and, though he may sell or dispose of such right, he will not be deemed to have conveyed, parted with, or extinguished it unless his intention so to do clearly appears from express language or by necessary implication." Syl. Pt. 1, *Winnings v. Wilpen Coal Co.*, 134 W.Va. 387, 59 S.E.2d 655 (1950).

2.      "Under the West Virginia common law of property, the well recognized and firmly established rule is that when a landowner has conveyed the minerals underlying the surface of the land, he retains the right to the support of the surface in its natural state, but the owner of land may release or waive his property right of subjacent support by the use of language that clearly shows that he intends to do so[.]" Syllabus, in part, *Rose v. Oneida Coal Co., Inc.*, 180 W.Va. 182, 375 S.E.2d 814 (1988).

3.      "Deeds are subject to the principles of interpretation and construction that govern contracts generally." Syl. Pt. 3, *Faith United Methodist Church v. Morgan*, 231 W.Va. 423, 745 S.E.2d 461 (2013).

4.      "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation

i

but will be applied and enforced according to such intent." Syl. Pt. 1, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962).

5.      "It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them." Syl. Pt. 3, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962).

6.      "Extrinsic evidence will not be admitted to explain or alter the terms of a written contract which is clear and unambiguous." Syl. Pt. 9, *Paxton v. Benedum-Trees Oil Co.*, 80 W.Va. 187, 94 S.E. 472 (1917).

7.      "Where a deed conveys the surface of a tract of land, reserving the coal and the right to mine and ship all of the coal, the surface is divested of its inherent right of support from the coal." Syl. Pt. 2, *Simmers v. Star Coal & Coke Co.*, 113 W.Va. 309, 167 S.E. 737 (1933).

8.      "Where a deed conveys the coal under a tract of land, together with all the rights and privileges necessary and useful in the mining and removal of said coal, including the right of mining the same with or without leaving any support for the overlying strata, and without liability for any injury which may result to such overlying strata or to the surface, or to water courses or roads or ways by reason of the mining and

ii

removal of said coal, the grantee is not liable for damages to the surface or to structures upon the surface, which damages result from surface subsidence proximately resulting from the mining and removal of such coal." Syllabus, *Stamp v. Windsor Power House Coal Co.*, 154 W.Va. 578, 177 S.E.2d 146 (1970).

9.     "The definitions of 'surface mine,' 'surface mining,' or 'surface-mining operations' contained within the West Virginia Surface Coal Mining and Reclamation Act, W.Va. Code § 22-3-1, *et seq.*, include 'surface impacts incident to an underground coal mine,' and areas 'where such activities disturb the natural land surface.'" Syl. Pt. 4, *Antco, Inc. v. Dodge Fuel Corp.*, 209 W.Va. 644, 550 S.E.2d 622 (2001).

10.     "Pursuant to the West Virginia Surface Coal Mining and Reclamation Act, W.Va. Code, 22A-3-14 (1985) [now W.Va. Code, 22-3-14 (1994)], and 30 U.S.C. § 1266 (1977) of the federal Surface Mining Control and Reclamation Act and their accompanying regulations, the operator of an underground mine is required to correct any material damage resulting from subsidence caused to surface lands, to the extent technologically and economically feasible by restoring the land to a condition capable of maintaining the value and reasonable foreseeable uses which it was capable of supporting before subsidence." Syl. Pt. 4, *Rose v. Oneida Coal Co., Inc.*, 195 W.Va. 726, 466 S.E.2d 794 (1995).

11. "A regulation that is proposed by an agency and approved by the Legislature is a 'legislative rule' as defined by the State Administrative Procedures Act, *W.Va. Code*, 29A-1-2(d) [1982], and such a legislative rule has the force and effect of law." Syl. Pt. 5, *Smith v. W.Va. Human Rights Comm'n*, 216 W.Va. 2, 602 S.E.2d 445 (2004).

12. "The West Virginia Surface Coal Mining and Reclamation Act allows for a private cause of action: 'Any person or property who is injured through the violation by any operator of any rule, order or permit issued pursuant to this article may bring an action for damages, including reasonable attorney and expert witness fees, in any court of competent jurisdiction. . . .' W.Va. Code § 22-3-25(f) (1994)." Syl. Pt. 5, *Antco, Inc. v. Dodge Fuel Corp.*, 209 W.Va. 644, 550 S.E.2d 622 (2001).

13. A surface owner may commence a civil action against a coal operator pursuant to West Virginia Code § 22-3-25(f) (1994) alleging that injury to the surface owner's person or property was caused through the coal operator's violation of a rule, order, or permit issued under the West Virginia Coal Mining and Reclamation Act [West Virginia Code §§ 22-3-1 to 22-3-38]. If the surface owner proves a violation and that the violation caused the alleged injury, the surface owner may recover monetary damages including, but not limited to, damages for annoyance and inconvenience resulting from the violation. In the event the surface owner is unable to prove that the coal operator violated such rule, order, or permit, or proves the violation but fails to prove

that the violation caused the alleged injury, then the surface owner's remedies for subsidence damage caused by a coal operator are those provided in the West Virginia Code of State Rules §§ 38-2-16.2.c to 38-2-16.2.c.2.

14.     "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975).

15.     "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. Pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968).

16.     "Undefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning." Syl. Pt. 6, in part, *State ex rel. Cohen v. Manchin*, 175 W.Va. 525, 336 S.E.2d 171 (1984).

17.     "Statutes which are remedial in their very nature should be liberally construed to effectuate their purpose." Syl. Pt. 6, *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953).

18.     "The West Virginia Surface Coal Mining and Reclamation Act, W.Va. Code § 22-3-1, *et seq.*, is remedial legislation that has as one of its primary

purposes the protection of the public from the potentially destructive effects that mining may have on our lands, forests and waters." Syl. Pt. 3, *Antco, Inc. v. Dodge Fuel Corp.*, 209 W.Va. 644, 550 S.E.2d 622 (2001).

19.     "Annoyance and inconvenience can be considered as elements of proof in measuring damages for loss of use of real property." Syl. Pt. 3, *Jarrett v. Harper & Son, Inc.*, 160 W.Va. 399, 235 S.E.2d 362 (1977), *modified on other grounds by Brooks v. City of Huntington*, 234 W.Va. 607, 768 S.E.2d 97 (2014).

20.     The West Virginia Code of State Rules §§ 38-2-16.2.c. to 38-2-16.2.c.2, which were promulgated pursuant to the West Virginia Surface Coal Mining and Reclamation Act [West Virginia Code §§ 22-3-1 to 22-3-38], provide that when a coal operator causes subsidence damage to structures or facilities, the operator is required to either correct the material damage caused to any structures or facilities by repairing the damage or compensate the owner of such structures or facilities in the full amount of the diminution in value resulting from the subsidence. The owner of the damaged structures or facilities shall choose between the two remedies.

LOUGHRY, Justice:

This matter is before the Court upon a July 18, 2017, order of the United

States Court of Appeals for the Fourth Circuit certifying the following four questions to

this Court:

>    (1)     Under West Virginia law, does a deed provision
> (1902) transferring the right to mine coal "without leaving
> any support for the overlying strata and without liability for
> any injury which may result to the surface from the breaking
> of said strata," prohibit a surface estate owner from pursuing
> a common law claim for loss of support arising from
> subsidence caused by the extraction of coal from below the
> surface?
>
>    (2)     Assuming the surface lands and residence of a
> landowner have been materially damaged from subsidence,
> does the West Virginia Surface Coal Mining and Reclamation
> Act, W.Va. Code § 22-3-1 *et seq.*, (the "Act") authorize an
> action against the coal mine operator for the damage so
> arising; or, are landowners only permitted to seek injunctive
> relief compelling compliance with the Act's provisions?
> *Compare* W.Va. Code § 22-3-25(a), *with id.* § 22-3-25(f)?
>
>    (3)     (a) If the Act permits a suit for damages, what is the
> proper measure of damages? Specifically, is a landowner
> permitted to recover only the diminution in value to the
> property arising from the subsidence, or can the property
> owner alternatively recover damages in an amount equal to
> the cost to repair the property?
>
>          (b) Additionally, if the Act permits a suit for damages,
> can those damages include compensation for "annoyance,
> inconvenience, aggravation and/or loss of use"?
>
>    (4)     Lastly, the regulations issued under the Act provide
> that when a coal mine operator causes subsidence damage to
> the "structures or facilities," the operator must either correct it
> or "compensate the owner . . . in the full amount of the
> dimunition in value" as a result of the mining. *See* W.Va.

1

Code R. § 38-2-16.2.c.2; *see also id.* § 38-2-16.2.c.1. The regulations, however, do not designate which party gets to make this election between remedies if the parties fail to reach an agreement. Between the landowner and the coal mine operator, who elects the appropriate remedy and what standards govern that decision?

By order dated August 30, 2017, this Court accepted the certified questions and docketed the matter for resolution. Upon review of the parties' briefs, arguments, and the appendix record, we answer the certified questions.[1]

## I. Factual and Procedural Background

The respondents, Michael and Patricia Schoene, own the surface to approximately fifty-five acres of land in Marshall County on which sits their residence. The petitioner, McElroy Coal Company ("McElroy"), owns and/or leases the coal beneath the surface. In a 1902 deed, the Schoenes' predecessors-in-interest severed the coal and conveyed it with the express waiver of the right to recover any common law damages resulting from the loss of subjacent support. The waiver clause provides:

> Together with all the rights and privileges necessary and useful in the mining and removing of the said coal, including the right of mining the same without leaving any support for the overlying stratas [sic] and without liability for any injury which may result to the surface from the breaking of said strata[.]

---

[1]This Court would like to acknowledge the participation of the West Virginia Coal Association in filing an amicus curiae brief in this case in support of McElroy. We have considered the arguments of the Coal Association in answering the certified questions.

In 2012, McElroy mined coal under the Schoenes' property using the longwall mining method. This activity caused subsidence to the Schoenes' surface estate, including damage to their residence. As a result, the Schoenes filed an action against McElroy in the Circuit Court of Marshall County. McElroy removed the action to the United States District Court for the Northern District of West Virginia under diversity jurisdiction.

The Schoenes subsequently amended their complaint to add statutory claims under, *inter alia*, the West Virginia Surface Coal Mining and Reclamation Act, West Virginia Code §§ 22-3-1 to 22-3-38 ("the Coal Mining Act" or "the Act"). These statutory claims alleged that the subsidence arising from McElroy's mining activities caused material damage to the Schoenes' surface estate and residence, and that McElroy had neither corrected nor paid for the damage. The Schoenes also sought to recover damages for their inconvenience and emotional and mental anguish, stress, and anxiety.

McElroy moved for partial summary judgment, alleging that the waiver clause in the 1902 deed precluded relief on the Schoenes' common law claim and that the the Act did not authorize all of the relief the Schoenes sought in their statutory claim. The Schoenes conceded the waiver issue. Specifically, the Schoenes indicated in their response to McElroy's motion for summary judgment:

> The [Schoenes] agree, after additional discovery, research and consideration, that the matters for resolution in this case are much more limited than those originally pled in their

Complaint and Amended Complaint. The [Schoenes] now agree, and do not dispute, that there is a waiver of subjacent support included within the title chain to their property. The [Schoenes], therefore, acknowledge and agree that they cannot pursue traditional common law property damage claims related to the mining operations conducted under their property. The [Schoenes] therefore agree that Count 1 of their complaint would not be [a] viable claim for trial purposes in this matter.

The federal district court disregarded the Schoenes' concession and denied McElroy's motion for summary judgment on the Schoenes' common law claim.

The case proceeded to trial during which both parties adduced evidence regarding the cost to repair the damage to the Schoenes' residence and land. The jury awarded the Schoenes $547,000, which sum includes $350,000 for repair to their residence, $172,000 for repair to the land, and $25,000 for the Schoenes' annoyance, inconvenience, aggravation, and/or loss of use. McElroy appealed that decision to the United States Court of Appeals for the Fourth Circuit, which certified the questions set forth above.

## II. Standard of Review

We have consistently held that "[a] de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court." Syl. Pt. 1, *Light v. Allstate Ins. Co.*, 203 W.Va. 27, 506 S.E.2d 64 (1998). With this standard to guide us, we proceed to consider the certified questions.

# III. Discussion

## A. Waiver of Subjacent Support

The first certified question is:

> Under West Virginia law, does a deed provision (1902) transferring the right to mine coal "without leaving any support for the overlying strata and without liability for any injury which may result to the surface from the breaking of said strata" prohibit a surface estate owner from pursuing a common law claim for loss of support arising from subsidence caused by the extraction of coal from below the surface?

Under our law, generally, an owner of the surface estate has a right to subjacent support.

This Court held in syllabus point one of *Winnings v. Wilpen Coal Co.*, 134 W.Va. 387, 59 S.E.2d 655 (1950), as follows:

> A landowner who conveys the coal underlying the surface of his land has an absolute property right to subjacent support for the surface in its natural state and, though he may sell or dispose of such right, he will not be deemed to have conveyed, parted with, or extinguished it unless his intention so to do clearly appears from express language or by necessary implication.

We subsequently made clear, however, that the right to subjacent support can be waived.

> Under the West Virginia common law of property, the well recognized and firmly established rule is that when a landowner has conveyed the minerals underlying the surface of his land, he retains the right to the support of the surface in its natural state, but the owner of land may release or waive his property right of subjacent support by the use of language that clearly shows that he intends to do so[.]

Syllabus, in part, *Rose v. Oneida Coal Co., Inc.* (*Rose I*), 180 W.Va. 182, 375 S.E.2d 814 (1988).

We first address whether the subject waiver in the 1902 deed unambiguously waives the surface owners' right to subjacent support. McElroy posits that the waiver clause is express and unambiguous; consequently, it should be applied and not interpreted. The Schoenes, directly contrary to their position before the district court, now assert that the deed is ambiguous. According to the Schoenes, the granting of mining rights in the deed includes only those mining rights and privileges that are "necessary and useful." Because there is no definition of the terms "necessary and useful" in the deed, the Schoenes say that the deed is ambiguous.

Our law provides that "[d]eeds are subject to the principles of interpretation and construction that govern contracts generally." Syl. Pt. 3, *Faith United Methodist Church v. Morgan*, 231 W.Va. 423, 745 S.E.2d 461 (2013). Also, "[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. Pt. 1, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962). As a result, "[i]t is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them." *Id.* at 484, 128 S.E.2d at 628, syl. pt. 3. Finally, "[e]xtrinsic evidence will not be admitted to explain or alter the terms of a written contract which is clear and unambiguous." Syl. Pt. 9, *Paxton v. Benedum-Trees Oil Co.*, 80 W.Va. 187, 94 S.E. 472 (1917).

6

Upon application of our law to the waiver clause, we conclude that the clause expressly and unambiguously grants to the coal owner or lessee the right to mine the coal underneath the Schoenes' surface estate without leaving "any" surface support and without common law liability for "any" injury caused to the surface as a result of the mining. Although the Schoenes assert that the phrase "necessary and useful" is undefined and therefore renders the deed language ambiguous, we disagree. Giving the words "necessary" and "useful" their common and ordinary meaning,[2] these words simply recognize that a coal operator will use the most legally efficient manner available to remove the coal. These words have no effect on the unambiguous waiver language in the deed. Therefore, we conclude that the Schoenes' predecessors-in-interest expressly waived the right to any subjacent support in unambiguous language.

The next issue we address is the validity of the waiver of subjacent support. In denying McElroy's Motion for Summary Judgment, the federal district court cited syllabus point three of *Cogar v. Sommerville*, 180 W.Va. 714, 379 S.E.2d 764 (1989), for the rule that waivers of subjacent support are only valid insofar as the proposed activity was within the contemplation of the original parties to the conveyance. The district court reasoned that in order to be within the contemplation of the original parties to the 1902 deed, it must be shown that the mining method, in this case longwall mining, was contemplated by the parties at the time of severance. The district court also described the

---

[2] "Undefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning." Syl. Pt. 6, in part, *State ex rel. Cohen v. Manchin*, 175 W.Va. 525, 336 S.E.2d 171 (1984).

7

distinction between longwall mining and the method of mining utilized in 1902, known as room and pillar mining, as follows:

> With longwall mining, "extraction takes place across a long 'face' or 'wall' which is blocked out between two panel entries which contain at least three parallel entries. . . . The recent technological advances which developed powered self-advancing roof support systems revolutionized longwall mining. The new roof support devices have the strength to hold the mine top secure keeping the face open and preventing roof falls in the face zone. While the powered self-advancing roof support is holding up the mine top above the working area where the coal is being removed, the roof immediately behind the support line is allowed to break and cave."

> "Because of virtually complete extraction of coal with overlying rock caving into the mining void, there is resulting subsidence of overlying strata of the surface which, unlike room and pillar mining, is relatively quick and more predictable as to timing."

> On the other hand, "the room and pillar mining method derives its name from the driving of openings into coal seams to divide the coal into blocks; these blocks or 'pillars' are solid coal left *in situ* to support the overlying strata."

*Schoene v. McElroy Coal Co.*, No. 5:13-CV-95, 2016 WL 397636, at *4-5 (N.D.W.Va. Jan. 29, 2016) (quoting McGinley, *Proceedings of the Eastern Mineral Law Foundation Fifth Annual Institute*, Ch. 5, p. 5-2 (1984) (citations and footnote omitted)). The district court concluded that "the broad form waiver of subjacent support is not a valid waiver against the subsidence damage caused by longwall mining. Longwall mining was unknown in Marshall County and to the lessors at the time the instrument was executed." *Id.*, at *5.

8

McElroy asserts that the waiver in the 1902 deed unambiguously and expressly waives "any" subjacent support, which unequivocally demonstrates that the parties to the severance deed contemplated the loss of all support and potential damage to the surface estate from underground coal mining. According to McElroy, the proper inquiry is not whether the parties to the severance deed contemplated the actual underground mining method, but whether the parties to the 1902 deed contemplated the loss of surface support and whether the grantor waived the common law right to support. The Schoenes respond by essentially urging this Court to adopt the reasoning of the district court in denying McElroy's Motion for Summary Judgment: the waiver of subjacent support in the 1902 deed is invalid because the longwall method of mining the coal could not have been contemplated in 1902 by the parties to the 1902 severance deed.

In their arguments to this Court, McElroy and the Schoenes cite to two different lines of cases to support their respective positions regarding the validity of the waiver. The line of cases supporting McElroy's position details this Court's acknowledgment that when parties to a coal severance deed expressly waive the right to support and liability, that agreement will be enforced. The Court's reasoning in this line of cases expressly addresses the "contemplation of the parties" argument advanced by the Schoenes, as follows:

> [I]n all sales of minerals the question of injury to the lands not conveyed is of so much importance that courts should not assume that it was not considered and made part of the consideration of the deed. . . . [I]t is a matter of common information, known to all who have paid any attention to

> mining that in coal mines the coal will have to remain in place as a support, or the surface be permitted to subside. . . . So it is a question of leaving something like one-half the coal in the mine or removing all and permitting the overlying surface to adjust itself to a new bed. And this, I again repeat, should be left for the parties to determine by their contract. If the owner of the coal wishes to keep half of it as a support for the surface he has a perfect right to do so, and if he wishes to sell all, and permit all to be removed he may also do that. When he has made his contract in accordance with his own will and reduced it to writing the courts may declare the legal effect of the writing but cannot change it.

*Griffin v. Fairmont Coal Co.*, 59 W.Va. 480, 491-92, 53 S.E. 24, 29 (1905). This statement clearly reflects the general awareness in 1905 that conveyance of all coal may well cause subsidence. The idea that some mining methods at that time were more likely than others to cause removal of all surface support is not indicated in *Griffin*. Rather, the Court specifically addresses the fact that the owner of the coal has the right to sell all of the coal and permit all of the coal to be removed. Therefore, *Griffin* stands for the proposition that the parties to a severance deed may elect to allow all of the coal to be removed, which may leave no support for the surface estate. Once the parties contemplate this fact, it simply is not relevant by what underground coal mining method the removal of all the coal is achieved.

In 1933, this contemplation, *i.e.*, the possibility of the removal of all coal and of the resulting subsidence, was reiterated by this Court:

> It is common knowledge in the coal fields that the removal of all of a seam of coal, even though several hundred feet below the surface (as in this instance), is likely to cause some surface disturbance. . . . It is not conceivable that one

10

who was purchasing or reserving surface would deliberately covenant that *all the coal should be removed*, if he were expecting the surface to be undisturbed. It is just as unreasonable that one buying or reserving coal would pay for or purport to reserve *all the coal*, and go through the farce of writing into the deed the right *to remove all the coal*, if he were contracting to leave the surface inviolate. Both grantor and grantee would well know that *all the coal could not be removed* if the surface were to be kept intact. A grantor cannot specifically sell a right and then recover damages of his grantee for using the very right sold; nor can a grantee recover damages of his grantor for employing a right when the grantee has agreed to the unrestricted reservation of the right. So, where the entire body of the coal and the express right to remove all of it has been purchased (as in the *Griffin* Case) or reserved (as in the instant case), there is no justification for mulcting the coal operator in damages for injuries arising from the exercise of that right.

The right "to mine" of itself comprehends excavation and removal. The only effect of adding the word "remove" is to emphasize the right of removal. . . . Therefore we must follow the *Griffin* decision, not only because it is logical, but also because it has become a rule of property in this state

*Simmers v. Star Coal & Coke Co.*, 113 W.Va. 309, 312-13, 167 S.E. 737, 738 (1933) (emphasis in original) (citations omitted). In syllabus point two of *Simmers*, this Court held that "[w]here a deed conveys the surface of a tract of land, reserving the coal and the right to mine and ship all of the coal, the surface is divested of its inherent right of support from the coal." *Id.* at 309, 167 S.E. at 737 (citing syllabus point three of *Griffin*). *Simmers* demonstrates the fallacy of the Schoenes' position that because longwall mining was utilized in this case, its removal of the surface support was not within the contemplation of the parties. What was clearly within the contemplation of the parties, even in the early 1900s, is that the right to mine and remove the coal would necessarily

11

result in subsidence. That is all that has occurred in this case—subsidence. The means by which that occurred is irrelevant. In 1970, this Court again held that

> [w]here a deed conveys the coal under a tract of land, together with all the rights and privileges necessary and useful in the mining and removal of said coal, including the right of mining the same with or without leaving any support for the overlying strata, and without liability for any injury which may result to such overlying strata or to the surface, or to water courses or roads or ways by reason of the mining and removal of said coal, the grantee is not liable for damages to the surface or to structures upon the surface, which damages result from surface subsidence proximately resulting from the mining and removal of such coal.

Syllabus, *Stamp v. Windsor Power House Coal Co*., 154 W.Va. 578, 177 S.E.2d 146 (1970). The clarity of these holdings likely led to the Schoenes' concession that they had no common law cause of action.

The line of cases relied on by the district court and the Schoenes simply is not on point. *See Cogar*, 180 W.Va. 714, 379 S.E.2d 764; *Brown v. Crozer Coal & Land Co*., 144 W.Va. 296, 107 S.E.2d 777 (1959); and *W.Va.-Pittsburgh Coal Co. v. Strong*, 129 W.Va. 832, 42 S.E.2d 46 (1947). As noted above, the federal district court relied on the rule that waivers of subjacent support are only valid insofar as the proposed activity was contemplated by the original parties to the conveyance. To support this "contemplation of the parties" argument, the Schoenes rely on a single sentence in *Cogar*: "Our conclusion is in accord with the general principle that a release or waiver of liability or damages covers only those items that are within the ordinary contemplation of the parties." 180 W.Va. at 719, 379 S.E.2d at 769. In *Cogar*, the Court held that a waiver

12

of surface damages was insufficient to waive the right to enforce the Coal Mining Act's ban on mining within 300 feet of a dwelling. 180 W.Va. at 717, 379 S.E.2d at 769. The reason for that is obvious—waiver of damages for injury to the surface has little or nothing to do with a restriction on where mining can occur. This was a statutory prohibition that was enacted well after the deed at issue in *Cogar*. At the time the parties executed the deed, they clearly could not have contemplated a future ban on mining within 300 feet of a dwelling. In contrast, at the time of the 1902 deed in the instant case, the parties to the deed could and did contemplate the removal of all subjacent support.

*Brown* and *Strong* are likewise inapposite from the issue presented here. In *Brown*, this Court held in syllabus point eight:

> Deeds, one made in 1904 granting mineral rights in "all minerals" with "all rights-of-way, of ingress and egress over, across and through [said land] for the purpose of removing the minerals &c. therefrom"; one made in 1905 granting "all the coal and other minerals and mineral substances . . . together with the right to mine and remove said minerals in the most approved method"; and one made in 1907 reserving "all minerals . . . together with all necessary and useful rights for the proper mining, pumping, transporting of said minerals" do not give owners of such mineral rights the right to engage in improper mining such as would damage the surface owned by others by augur mining, a method of mining which at the time of the creation of the mineral rights was not an usual method of mining known and accepted as common practice in Wyoming County where the lands in question are located.

144 W.Va. at 296-97, 107 S.E.2d at 779-80. The Court explained the auger mining conducted in *Brown* as follows:

> The purpose of using the augur method was to get the coal out and it made no difference to the defendant that this method would split the plaintiffs' land in two sections, the spoilage being over a mile in length and up to 400 feet wide in places, that the timber on the land in connection with the mining of the coal would be destroyed or diminished in value. The right of ingress and egress and the building of roads certainly was not anticipated at the time the deeds in question were executed to any such extent as used in auger mining as indicated on the land of the plaintiffs in this case.

144 W.Va. at 309-10, 107 S.E.2d at 786. The Court also indicated in the opinion that

"auger mining . . . results in extensive destruction of the surface." 144 W.Va. at 304, 107

S.E.2d at 783.

At issue in *Strong* was language in a severance deed that granted to the coal

owners the following rights:

> Together with the right to enter upon and under said land with employees, animals and machinery at convenient point and points, and to mine, dig, excavate and remove all said coal, and to remove and convey from, upon, under and through, said land all said coal and the coal from other land and lands and to make and maintain on said land all necessary and convenient structures, roads, ways, and tramways, railroads, switches, excavations, air-shafts, drains and openings, for such mining, removal and conveying of all coal aforesaid, with the exclusive use of all such rights of way and privileges aforesaid, including right to deposit mine refuse on said land and waiving all claims for injury or damage done by such mining and removal of coal aforesaid and use of such privileges.

129 W.Va. at 833, 42 S.E.2d at 48. The specific issue in *Strong* was whether the rights

granted in the deed included the right of strip mining. This Court concluded that the

language did not include the right to strip mine because at the time the deed was executed

in 1904, "the practice of strip mining was [not] known in this State to the extent that it was necessarily within the implied contemplation of the parties to a private contract[.]" *Id.* at 837, 42 S.E.2d at 49. The Court concluded that "it was not within the contemplation of the parties that the owner of the coal *by virtue of the mining rights granted* should be entitled to remove any part of the surface[.]" *Id*. at 838, 42 S.E.2d at 50 (emphasis in original).

In sum, this Court does not find the cases relied upon by the district court and the Schoenes to be applicable to the instant case. Those cases reject the notion of implying a right to *directly* destroy the surface in a manner not contemplated by typical mining methods. In contrast, the issue in this case is the express waiver of damages for loss of surface support, which is a natural incident of any underground mining regardless of the methodology.

The certified question before us is whether a 1902 deed provision transferring the right to mine coal "without leaving any support for the overlying strata and without liability for any injury which may result to the surface from the breaking of said strata" prohibits a surface owner from pursuing a common law claim for loss of support arising from subsidence caused by the extraction of the coal from below the surface. We answer the question in the affirmative.

## B.  Remedy for Injury Under
## The West Virginia Surface Coal Mining And Reclamation Act

Although the Schoenes are precluded from bringing a common law action against McElroy for damages caused to their property by subsidence, our answer to the first certified question does not resolve the issue whether the Schoenes may receive compensation for their damages pursuant to the West Virginia Surface Coal Mining and Reclamation Act, West Virginia Code §§ 22-3-1 to 22-3-38.[3] This Court has succinctly explained the Act as follows:

> In 1977, Congress enacted the Surface Mining Control and Reclamation Act to "establish a nationwide program to protect society and the environment from the adverse effects of surface mining operations[.]" 30 U.S.C. § 1202(a) [1977]. The federal Act encourages "cooperative federalism" by allowing a State to adopt its own comparable program for the regulation of mining. *See* 30 U.S.C. § 1253 [1977]. The State's "program need not be identical to the federal program, as long as its provisions are at least as stringent as those provided for in the federal act." *Canestraro v. Faeber*, 179 W.Va. 793, 794, 374 S.E.2d 319, 320 (1988). West Virginia adopted a comparable mining regulation program, the West Virginia Surface Coal Mining and Reclamation Act, which took effect in 1981. *See 1980 Acts of the Legislature,* ch. 87.

*Huffman v. Goals Coal Co.*, 223 W.Va. 724, 726, 679 S.E.2d 323, 325 (2009). Although the instant facts do not concern surface mining, but rather underground mining that damaged the surface and buildings on the surface, the Coal Mining Act still applies. This

---

[3]This Court held in the syllabus of *Rose I*, in part, that the West Virginia common law of property "has been modified to some extent by the enactment of the West Virginia Surface Coal Mining and Reclamation Act, *W.Va. Code*, 22A-3-1 [1985], *et seq.*" 180 W.Va. at 183, 375 S.E.2d at 815.

Court has held that "[t]he definitions of 'surface mine,' 'surface mining,' or 'surface-mining operations' contained within the West Virginia Surface Coal Mining and Reclamation Act, W.Va. Code §22-3-1, *et seq.* include 'surface impacts incident to an underground coal mine,' and areas 'where such activities disturb the natural land surface.'" Syl. Pt. 4, *Antco, Inc. v. Dodge Fuel Corp.*, 209 W.Va. 644, 550 S.E.2d 622 (2001).

We now turn to the second and third certified questions which we will address together as the parties do in their briefs.

> Assuming the surface lands and residence of a landowner have been materially damaged from subsidence, does the West Virginia Surface Coal Mining and Reclamation Act, W.Va. Code § 22-3-1 *et seq.*, (the "Act") authorize an action against the coal mine operator for the damage so arising; or, are landowners only permitted to seek injunctive relief compelling compliance with the Act's provisions? *Compare* W.Va. Code § 22-3-25(a), with *id.* § 22-3-25(f)?
>
> (a) If the Act permits a suit for damages, what is the proper measure of damages? Specifically, is a landowner permitted to recover only the diminution in value to the property arising from subsidence, or can the property owner alternatively recover damages in an amount equal to the cost to repair the property?
>
> (b) Additionally, if the Act permits a suit for damages, can those damages include compensation for "annoyance, inconvenience, aggravation and/or loss of use?

It is McElroy's position that the only claim authorized by the Act under the facts of this case is for repair of land and, with regard to the residence, either repair or compensation in the amount of diminution in value pursuant to the West Virginia Code of State Rules §§ 38-2-16.2.c. to 38-2-16.2.c.2., which are rules promulgated pursuant to the Act. McElroy acknowledges that West Virginia Code § 22-3-25(f) provides for a statutory claim to recover damages where the surface owner can show a coal operator's violation of the Act. McElroy contends, however, that monetary damages are not recoverable under this statute in the instant case because the Schoenes failed to show a violation by McElroy of the Act that resulted in damage to the Schoenes. Instead, says McElroy, the Schoenes' injuries were caused by subsidence which is a natural consequence of underground mining and not evidence of a violation of the Act. McElroy further asserts that the lawsuit between the parties resulted from a disagreement regarding the cost to repair the Schoenes' land and residence and cannot possibly constitute a violation of the Act. Rather, avers McElroy, the lawsuit could only result in an order to compel McElroy to comply with the requirements of the West Virginia Code of State Rules §§ 38-2-16.2.c. to 38-2-16.2.c.2. based on the jury's findings of cost to repair and diminution in value. Therefore, McElroy answers the second and third certified questions as follows: the West Virginia Surface Coal Mining and Reclamation Act does not allow monetary damages for the repair of a residence, the repair of land or damages for annoyance inconvenience, aggravation, and/or loss of use of the surface owner's property.

The Schoenes argue that they had the authority to seek an award of damages under West Virginia Code § 22-3-25(f). The Schoenes aver that McElroy violated its duty under the West Virginia Code of State Rules § 38-2-16.2.c.2. to repair the damage caused by its mining operations or, alternatively, to compensate for that damage "by dragging its feet and obstructing the compensation process for nearly three years." The Schoenes assert that this conduct constitutes a violation of a rule promulgated pursuant to the Act, therefore it falls within the scope of West Virginia Code § 22-3-25(f). Regarding the proper measure of damages under West Virginia Code § 22-3-25(f), the Schoenes contend that these damages should include compensation for damages to residential property as provided for by this Court in *Brooks v. City of Huntington*, 234 W.Va. 607, 768 S.E.2d 97 (2014), which include the reasonable cost for repairing the residence, even if the costs exceed the fair market value before the damage, and the related expenses stemming from the injury, including damages for annoyance, inconvenience, aggravation, and loss of use during the repair period.

The issue of whether the Schoenes successfully proved in the district court that McElroy violated a rule, order, or permit under the Coal Mining Act is not before this Court. Accordingly, we will answer certified questions two and three by addressing the proper remedy when a person proves a violation of a rule, order, or permit under the Act and when they fail to prove a violation. As discussed above, subsidence is a natural consequence of underground coal mining, and is not necessarily evidence of a violation of the Coal Mining Act. *See Keystone Bituminous Coal Assoc. v. DeBenedictis*, 480 U.S.

19

470, 474 (1987) (recognizing that "[c]oal subsidence is the lowering of strata overlying a coal mine, including the land surface, caused by the extraction of underground coal."). Under the State's Coal Mining Act, a coal operator is required to repair any material damage to a surface owner's property as the result of subsidence. Specifically, we held in syllabus point four of *Rose v. Oneida Coal Company* (*"Rose II"*), 195 W.Va. 726, 466 S.E.2d 794 (1995):

> Pursuant to the West Virginia Surface Coal Mining and Reclamation Act, W.Va. Code, 22A-3-14 (1985) [now W.Va. Code, 22-3-14 (1994)], and 30 U.S.C. § 1266 (1977) of the federal Surface Mining Control and Reclamation Act and their accompanying regulations, the operator of an underground mine is required to correct any material damage resulting from subsidence caused to surface lands, to the extent technologically and economically feasible by restoring the land to a condition capable of maintaining the value and reasonably foreseeable uses which it was capable of supporting before subsidence.

The "accompanying regulations" referred to in this syllabus point are found in the West Virginia Code of State Rules §§ 38-2-16.2.c. to 38-2-16.2.c.2., which were promulgated by the State Department of Environmental Protection pursuant to West Virginia Code § 22-3-14 (1994). These rules provide, in applicable part, as follows:

> 16.2.c. Material Damage. Material damage in the context of this section and 3.12 of this rule means: any functional impairment of surface lands, features, structures or facilities; any physical change that has a significant adverse impact on the affected land's capability to support current or reasonably foreseeable uses or causes significant loss in production or income; or any significant change in the condition, appearance or utility of any structure from its pre-subsidence condition. The operator shall:

16.2.c.1. Correct any material damage resulting from subsidence caused to surface lands, to the extent technologically and economically feasible, by restoring the land to a condition capable of maintaining the value and reasonably foreseeable uses which it was capable of supporting before subsidence;

16.2.c.2. Either correct material damage resulting from subsidence caused to any structures or facilities by repairing the damage or compensate the owner of such structures or facilities in the full amount of the diminution in value resulting from the subsidence. Repair of damage includes rehabilitation, restoration, or replacement of damaged structures or facilities. Compensation may be accomplished by the purchase prior to mining of a non-cancelable premium-prepaid insurance policy. The requirements of this paragraph only apply to subsidence related damage caused by underground mining activities conducted after October 24, 1992[.][4]

(Footnote added).

The West Virginia Code of State Rules §§ 38-2-1 to 38-2-24.9.3 are legislative rules.[5] This Court has explained that "[a] regulation that is proposed by an

---

[4] This Court quotes the provisions that became effective July 1, 2016. Even though the events in this case occurred while the 2011 version of the rule was in effect, the applicable language is the same in both versions of the rule.

[5] The analogous federal rule is found at 30 C.F.R. § 817.121, which provides:

(c)(1) Repair of damage to surface lands. The permittee must correct any material damage resulting from subsidence caused to surface lands, to the extent technologically and economically feasible, by restoring the land to a condition capable of maintaining the value and reasonably foreseeable uses that it was capable of supporting before subsidence damage.

agency and approved by the Legislature is a 'legislative rule' as defined by the State Administrative Procedures Act, *W.Va. Code*, 29A-1-2(d) [1982], and such a legislative rule has the force and effect of law." Syl. Pt. 5, *Smith v. W.Va. Human Rights Comm'n*, 216 W.Va. 2, 602 S.E.2d 445 (2004).

It is clear from these legislative rules and *Rose II* that a coal operator is required to correct any material damage resulting from subsidence caused to surface lands, to the extent technologically and economically feasible. *See Rose II*, 195 W.Va. at 727-28, 466 S.E.2d at 795-96, syl. pt. 4. The legislative rules also require the coal operator to either correct material damage resulting from subsidence caused to any structures or facilities by repairing the damage or compensate the owner of such structures or facilities in the full amount of the diminution in value resulting from the subsidence. We emphasize that the coal operator must perform these requirements even if

---

(2) Repair or compensation for damage to non-commercial buildings and related structures. The permittee must promptly repair, or compensate the owner for, material damage resulting from subsidence caused to any non-commercial building or occupied residential dwelling or structure related thereto that existed at the time of mining. If repair option is selected, the permittee must fully rehabilitate, restore or replace the damaged structure. If compensation is selected, the permittee must compensate the owner of the damaged structure for the full amount of the decrease in value resulting from the subsidence-related damage. The permittee may provide compensation by the purchase, before mining, of a non-cancelable premium-prepaid insurance policy. The requirements of this paragraph apply only to subsidence-related damage caused by underground mining activities conducted after October 24, 1992.

there is no proven violation of a rule, order, or permit issued pursuant to the Coal Mining Act. Therefore, we answer certified question two as follows: assuming the surface lands and residence of a landowner have been materially damaged from subsidence that is a natural result of underground mining, the surface owner is limited to the remedies provided for in the West Virginia Code of State Rules §§ 38-2-16.2.c. to 38-2-16.2.c.2.

This brings us to the third certified question regarding damages recoverable under this statute. In the event that a surface owner alleges that a coal operator violated a rule, order, or permit issued pursuant to the Coal Mining Act, the Act permits an action for damages in West Virginia Code § 22-3-25(f) (1994).[6]  In this regard, this Court has held:

> The West Virginia Surface Coal Mining and Reclamation Act allows for a private cause of action: "Any person or property who is injured through the violation by any operator of any rule, order or permit issued pursuant to this article may bring an action for damages, including reasonable attorney and expert witness fees, in any court of competent jurisdiction. . . ." W.Va. Code § 22-3-25(f) (1994).

*Antco, Inc.*, 209 W.Va. at 646, 550 S.E.2d at 624, syl. pt. 5. In answering this certified question, we are cognizant that "[t]he primary object in construing a statute is to ascertain

---

[6]The analogous federal provision is found at 30 U.S.C. § 1270(f) (1977), which provides in applicable part:

> Any person who is injured in his person or property through the violation by any operator of any rule, regulation, order, or permit issued pursuant to this chapter may bring an action for damages (including reasonable attorney and expert witness fees) only in the judicial district in which the surface coal mining operation complained of is located.

23

and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). Also, "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. Pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). Moreover, "[u]ndefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning." Syl. Pt. 6, in part, *State ex rel. Cohen v. Manchin*, 175 W.Va. 525, 336 S.E.2d 171 (1984). Also of relevance here is our rule that "[s]tatutes which are remedial in their very nature should be liberally construed to effectuate their purpose." Syl. Pt. 6, *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953). Finally, this Court has held that "[t]he West Virginia Surface Coal Mining and Reclamation Act, W.Va. Code § 22-3-1, *et seq.*, is remedial legislation that has as one of its primary purposes the protection of the public from the potentially destructive effects that mining may have on our lands, forests and waters." *Antco,* 209 W.Va. at 646, 550 S.E.2d at 624, syl. pt. 3.

Application of these principles to West Virginia Code § 22-3-25(f) compels us to find that the language of this statute is clear and without ambiguity so that we do not have to resort to the rules of interpretation. Clearly, this statute permits an action for damages when "any person or property . . . is injured through the violation by any operator of any rule, order or permit issued pursuant to this article." The code section does not define the term "damages," although it does specify that such damages may include "reasonable attorney and expert witness fees." Because the term "damages" is not

24

defined in the statute, this Court will give the term its common, ordinary and accepted meaning. We find that the term "damages" as contained in the phrase "action for damages" in West Virginia Code § 22-3-25(f) refers to monetary compensation for an injury to a person or property. *See* Black's Law Dictionary 471 (10th ed. 2014) (defining "damages" as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury."). Therefore, if a surface owner proves that his or her person or property was injured through a coal operator's violation of a rule, order, or permit, the surface owner can receive monetary compensation for such injury pursuant to West Virginia Code § 22-3-25(f).

The third certified question also asks whether a party may seek compensation for annoyance, inconvenience, aggravation and/or loss of use. Again, we give the term "damages" its common and ordinary meaning as set forth above. This Court has held that "[a]nnoyance and inconvenience can be considered as elements of proof in measuring damages for loss of use of real property." Syl. Pt. 3, *Jarrett v. Harper & Son, Inc.*, 160 W.Va. 399, 235 S.E.2d 362 (1977), *modified on other grounds by Brooks v. City of Huntington*, 234 W.Va. 607, 768 S.E.2d 97 (2014). Clearly, a surface owner whose person or property is injured through a coal operator's proven violation of the Coal Mining Act may experience the loss of use of his or her property as a result thereof. In such an instance, a surface owner may be compensated for annoyance and inconvenience that is proven to have been caused by the loss of use of his or her property. In addition, West Virginia Code § 22-3-25(f) specifically refers to injury to a "person," which

25

certainly contemplates something beyond mere property repairs and would encompass annoyance and inconvenience damages. Accordingly, this Court answers part (b) of the third certified question as follows: In an action for damages for injury to the person or property as a result of the coal operator's violation of a rule, order, or permit under the Act, those damages can include compensation for annoyance and inconvenience caused by the loss of use of property resulting from a violation of the Act.

Therefore, based on our discussion above, we hold that a surface owner may commence a civil action against a coal operator pursuant to West Virginia Code § 22-3-25(f) (1994), alleging that injury to the surface owner's person or property was caused through the coal operator's violation of a rule, order, or permit issued under the West Virginia Coal Mining and Reclamation Act [West Virginia Code §§ 22-3-1 to 22-3-38]. If the surface owner proves a violation and that the violation caused the alleged injury, the surface owner may recover monetary damages including, but not limited to, damages for annoyance and inconvenience resulting from the violation. In the event the surface owner is unable to prove that the coal operator violated such rule, order, or permit, or proves the violation but fails to prove that the violation caused the alleged injury, then the surface owner's remedies for subsidence damage caused by a coal operator are those provided in the West Virginia Code of State Rules §§ 38-2-16.2.c. to 38-2-16.2.c.2.

## C. Election of Remedies

The final certified question provides:

> (4)     Lastly, the regulations issued under the Act provide that when a coal mine operator causes subsidence damage to the "structures or facilities," the operator must either correct it or "compensate the owner . . . in the full amount of the diminution in value" as a result of the mining. *See* W.Va. Code R. § 38-2-16.2.c.2; *see also id.* § 38-2-16.2.c.1. The regulations, however, do not designate which party gets to make this election between remedies if the parties fail to reach an agreement. Between the landowner and the coal mine operator, who elects the appropriate remedy and what standards govern that decision?

McElroy contends that the coal operator may elect whether to correct the damage or compensate the owner for the full amount of the diminution in value. McElroy cites the West Virginia Code of State Rules §§ 38-2-16.2.c. and 16.2.c.2. which provide that "[t]he operator shall . . . [e]ither correct material damage resulting from subsidence caused to any structures or facilities . . . or compensate the owner of such structures or facilities in the full amount[.]" According to McElroy, this language mirrors its federal counterpart and that under our law, and to the extent needed, courts should look to federal agency interpretations for guidance. McElroy contends that the federal Office of Surface Mining, which first published the applicable regulations in 1979, and which provide the blueprint for West Virginia's program a year later, consistently has instructed that the selection of the alternative remedies set forth in the analogous federal rule is to be given to the coal operator. Therefore, McElroy urges this Court to follow that construction here.[7]

---

[7] In its brief to this Court, McElroy goes to great lengths to discern the intent of the federal Office of Surface Mining regarding whether the surface owner or the coal

The Schoenes respond that the plain language of the Coal Mining Act and its rules never identify which party is entitled to elect between the available remedies of compensation or repair. According to the Schoenes, this ambiguity should be resolved by interpreting the Act broadly and liberally in favor of the Act's stated goal of providing surface protection for landowners when coal is mined from their property. Therefore, the Schoenes maintain that they should decide the proper remedy under the West Virginia Code of State Rules § 38-2-16.2.c.2.

We agree with the Schoenes. Despite McElroy's argument to the contrary, the rule is silent on the issue of whether the surface owner or the coal operator chooses the remedy for the repair of a surface structure. Although the rule provides that "[t]he operator shall" perform one of two actions, the rule does not indicate that the coal operator is the party who chooses which action to perform. While "silence does not equate to ambiguity[,]" "silence may render a statute ambiguous when the missing subject reasonably is necessary to effectuate the provision as written." *State v. Ramos*, 49 A.3d 197, 204 (Conn. 2012) (citations omitted). We find the rule at issue is ambiguous

---

operator elects the remedy under the analogous federal regulation. We note that the analogous federal regulation also does not specify which party makes the election between compensation and/or repairs of subsidence damage. Moreover, we have based our decision on our State regulation. As discussed above, the federal surface mining regulations are a set of minimum standards, not maximum standards. "The State's program need not be identical to the federal program, as long as its provisions are at least as stringent as those provided for in the federal act." *Huffman*, 223 W.Va. at 726, 679 S.E.2d at 325 (internal quotation marks and citation omitted).

because it cannot be effectuated until it is determined whether the surface owner or the coal operator chooses the remedy for a damaged surface structure.

As set forth above, "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." *Smith*, 159 W.Va. at 108, 219 S.E.2d at 362, syl. pt. 1. The Legislature expressly set forth its intent in enacting the Coal Mining Act as follows:

> (1) Expand the established and effective statewide program to protect the public and the environment from the adverse effects of surface-mining operations;
> (2) Assure that the rights of surface and mineral owners and other persons with legal interest in the land or appurtenances to land are adequately protected from such operations;
> (3) Assure that surface-mining operations are not conducted where reclamation as required by this article is not feasible;
> (4) Assure that surface-mining operations are conducted in a manner to adequately protect the environment;
> (5) Assure that adequate procedures are undertaken to reclaim surface areas as contemporaneously as possible with the surface-mining operations;
> (6) Assure that adequate procedures are provided for public participation where appropriate under this article;
> (7) Assure the exercise of the full reach of state common law, statutory and constitutional powers for the protection of the public interest through effective control of surface-mining operations; and
> (8) Assure that coal production essential to the nation's energy requirements and to the State's economic and social well-being is provided.

W.Va. Code § 22-3-2(b)(1)-(8) (1994).[8] Significantly, seven of the eight purposes of the Act, as articulated by the Legislature, are to protect the public, the environment, surface owners, and owners of minerals other than coal from the adverse effects of coal mining. As noted above, "[t]he West Virginia Surface Coal Mining and Reclamation Act, W.Va. Code § 22-3-1, *et seq.*, is remedial legislation that has as one of its primary purposes the protection of the public from the potentially destructive effects that mining may have on our lands, forests and waters." *Antco, Inc.,* 209 W.Va. at 646, 550 S.E.2d at 624, syl. pt. 3. Finally, we have long held that "[s]tatutes which are remedial in their very nature should be liberally construed to effectuate their purpose." *Vest*, 138 W.Va. at 661, 76 S.E.2d at 887, syl. pt. 6.

Upon application of our law to the construction of the West Virginia Code of State Rules §§ 38-2-16.2.c. to 16.2.c.2., this Court answers the fourth certified question by finding that the surface owner elects whether the coal operator will correct material damage resulting from subsidence to any of the surface owner's structures or facilities by repairing the damage, or by compensating the owner of the structures or facilities in the full amount of the diminution in value caused by the subsidence.[9] We believe that this conclusion is consistent with a liberal construction of the Coal Mining Act and congruous with the purposes of the Act, including the protection of surface

---

[8] This statute was amended effective June 9, 2016. However, we quote from the version of the statute that was in effect at the time of the events in this case.

[9] The State Department of Environmental Protection or the Legislature can certainly amend the legislative rule to specify whether the coal operator or the surface owner chooses the remedy.

owners. *See Tatum v. Basin Resources, Inc.*, 141 P.3d 863, 871 (Colo. App. 2006) (finding that "the Colorado Surface Coal Mining Reclamation Act and its associated regulations do not confer onto a defendant found to have caused subsidence damage to a plaintiff the power to elect which remedy to provide." (Citation omitted.)).

Accordingly, we hold that the West Virginia Code of State Rules §§ 38-2-16.2.c. to 38-2-16.c.2., which were promulgated pursuant to the West Virginia Surface Coal Mining and Reclamation Act [West Virginia Code §§ 22-3-1 to 22-3-38], provide that when a coal operator causes subsidence damage to structures or facilities, the operator is required to either correct the material damage caused to any structures or facilities by repairing the damage or compensate the owner of such structures or facilities in the full amount of the diminution in value resulting from the subsidence. The owner of the damaged structures or facilities shall choose between the two remedies.

## IV. Conclusion

For the reasons set forth above, we answer the certified questions as follows:

> (1)  Under West Virginia law, does a deed provision (1902) transferring the right to mine coal "without leaving any support for the overlying strata and without liability for any injury which may result to the surface from the breaking of said strata," prohibit a surface estate owner from pursuing a common law claim for loss of support arising from subsidence caused by the extraction of coal from below the surface?

31

Answer: Yes.

(2) Assuming the surface lands and residence of a landowner have been materially damaged from subsidence, does the West Virginia Surface Coal Mining and Reclamation Act, W.Va. Code § 22-3-1 *et seq.*, (the "Act") authorize an action against the coal mine operator for the damage so arising; or, are landowners only permitted to seek injunctive relief compelling compliance with the Act's provisions? *Compare* W.Va. Code § 22-3-25(a) with *id.* § 22-3-25(f), and

(3) (a) If the Act permits a suit for damages, what is the proper measure of damages? Specifically, is a landowner permitted to recover only the diminution in value to the property arising from the subsidence, or can the property owner alternatively recover damages in an amount equal to the cost to repair the property?

(b) Additionally, if the Act permits a suit for damages, can those damages include compensation for "annoyance, inconvenience, aggravation and/or loss of use"?

Answer: A surface owner may commence a civil action against a coal operator pursuant to West Virginia Code § 22-3-25(f) (1994) alleging that injury to the surface owner's person or property was caused through the coal operator's violation of a rule, order, or permit issued under the West Virginia Coal Mining and Reclamation Act [West Virginia Code §§ 22-3-1 to 22-3-38]. If the surface owner proves a violation and that the violation caused the alleged injury, the surface owner may recover monetary damages including, but not limited to, damages for annoyance and inconvenience resulting from the violation. In the event the surface owner is unable to prove that the coal operator violated such rule, order, or permit, or proves the violation but fails to prove that the violation caused the alleged injury, then the surface owner's remedies for subsidence damage are those provided in the West Virginia Code of State Rules §§ 38-2-16.2.c to 38-2-16.2.c.2.

(4) Lastly, the regulations issued under the Act provide that when a coal mine operator causes subsidence damage to the "structures or facilities," the operator must

either correct it or "compensate the owner . . . in the full amount of the diminution in value" as a result of the mining. *See* W.Va. Code R. § 38-2-16.c.2; *see also id.* § 38-2-16.2.c.1. The regulations, however, do not designate which party gets to make this election between remedies if the parties fail to reach an agreement. Between the landowner and the coal mine operator, who elects the appropriate remedy and what standards govern that decision?

Answer: The owner of the structures or facilities chooses the remedy.

Certified Questions Answered.