**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1788**

MICHAEL SCHOENE; PATRICIA SCHOENE,

        Plaintiffs – Appellees,

    v.

MCELROY COAL COMPANY,

        Defendant – Appellant,

   and

CONSOL ENERGY, INCORPORATED; CONSOL ENERGY COMPANY,

        Defendants.

---------------------------------------

THE WEST VIRGINIA COAL ASSOCIATION (WVCA),

        Amicus Curiae.

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling. John Preston Bailey, District Judge. (5:13-cv-00095-JPB)

Argued: May 11, 2017                         Decided: July 18, 2017

Before AGEE, KEENAN, and HARRIS, Circuit Judges.

Questions certified to the Supreme Court of Appeals of West Virginia by unpublished order. Judge Agee prepared the order in which Judge Keenan and Judge Harris join.

———————————

**ARGUED:** Rodger L. Puz, DICKIE, MCCAMEY & CHILCOTE, P.C., Pittsburgh, Pennsylvania, for Appellant. Jeremy Matthew McGraw, BORDAS & BORDAS, PLLC, Moundsville, West Virginia, for Appellees. **ON BRIEF:** J.R. Hall, DICKIE, MCCAMEY & CHILCOTE, P.C., Pittsburgh, Pennsylvania, for Appellant. James G. Bordas, Jr., BORDAS & BORDAS, PLLC, Wheeling, West Virginia, for Appellees. J. Thomas Lane, Charleston, West Virginia, Carrie J. Lilly, BOWLES RICE LLP, Morgantown, West Virginia, for Amicus Curiae.

———————————

_____

## ORDER OF CERTIFICATION TO THE
## SUPREME COURT OF APPEALS OF WEST VIRGINIA

_____

AGEE, Circuit Judge:

Pursuant to West Virginia's Uniform Certification of Questions of Law Act, W. Va. Code § 51-1A-1 et seq., we hereby respectfully request that the Supreme Court of Appeals of West Virginia exercise its discretion to answer the following question:

> (1) Under West Virginia law, does a deed provision (1902) transferring the right to mine coal "without leaving any support for the overlying stratas and without liability for any injury which may result to the surface from the breaking of said strata," J.A. 21, prohibit a surface estate owner from pursuing a common law claim for loss of support arising from subsidence caused by the extraction of coal from below the surface?

If the Supreme Court of Appeals of West Virginia answers the above question in the affirmative, then we respectfully ask that the court also answer the following questions:

> (2) Assuming the surface lands and residence of a landowner have been materially damaged from subsidence, does the West Virginia Surface Coal Mining and Reclamation Act, W. Va. Code § 22-3-1 et seq., (the "Act") authorize an action against the coal mine operator for the damage so arising; or, are landowners only permitted to seek injunctive relief compelling compliance with the Act's provisions? Compare W. Va. Code § 22-3-25(a), with id. § 22-3-25(f);

> (3) (a) If the Act permits a suit for damages, what is the proper measure of damages? Specifically, is a landowner permitted to recover only the diminution in value to the property arising from the subsidence, or can the property owner alternatively recover damages in an amount equal to the cost to repair the property?;

3

(b) Additionally, if the Act permits a suit for damages, can those damages include compensation for "annoyance, inconvenience, aggravation and/or loss of use"?; and

(4) Lastly, the regulations issued under the Act provide that when a coal mine operator causes subsidence damage to the "structures or facilities," the operator must either correct it or "compensate the owner . . . in the full amount of the diminution in value" as a result of the mining. *See* W. Va. Code R. § 38-2-16.2.c.2; *see also id.* § 38-2-16.2.c.1. The regulations, however, do not designate which party gets to make this election between remedies if the parties fail to reach an agreement. Between the landowner and the coal mine operator, who elects the appropriate remedy and what standards govern that decision?

The answers to these questions of state law will likely be determinative of the issues in the case pending before us. No controlling West Virginia appellate decision, constitutional provision, or statute answers these queries. In support of this request, we briefly set out the relevant facts and legal issues in this case.

## I. Relevant Facts & Proceedings

This case stems from subsidence damage to the surface estate and residence of Michael and Patricia Schoene (the "Schoenes"), which occurred after McElroy Coal Company ("McElroy) engaged in authorized longwall mining of the subsurface estate. The dispute concerns what relief, if any, to which the Schoenes are entitled under West Virginia common law and statute.

The 1902 deed for the real property at issue severed the coal rights (now owned by McElroy) from the rest of the estate (now owned by the Schoenes). The deed states that the transferred coal rights include:

the right [to mine the land] without leaving any support for the overlying stratas and without liability for any injury which may result to the surface from the breaking of said strata.

J.A. 121. This "waiver" provision is similar or identical to language contained in other West Virginia deeds from the same time period.

In 2012, McElroy mined coal on the property using the longwall mining method. This activity caused subsidence to the Schoenes' surface estate, including damage to their residence.

The Schoenes filed a complaint in West Virginia state court alleging a common law claim seeking damages for loss of support to the surface estate. McElroy later removed the case to the United States District Court for the Northern District of West Virginia, where the Schoenes amended their complaint to add statutory claims under the federal Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 *et seq.*, and the Act.[1] These statutory claims alleged that the subsidence arising from McElroy's mining activities had caused material damage to the Schoenes' surface estate and residence, and that McElroy had not corrected or paid for that damage. In addition to seeking to recover for that damage, the Schoenes sought damages for their inconvenience, "significant emotional and mental anguish, stress and anxiety." J.A. 21.

McElroy moved for partial summary judgment, alleging that the waiver clause contained in the 1902 deed precluded relief on the Schoenes' common law claim and that

---

[1] These statutory claims merge, with the state statutory requirements governing the Schoenes' claims. *See* 30 U.S.C. § 1255; *see also Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 288–98 (4th Cir. 2001).

5

the Act did not authorize all the relief the Schoenes sought in their statutory claims. The Schoenes conceded the waiver issue, but nonetheless argued they were entitled to obtain relief on their statutory claim.

Notwithstanding the Schoenes' concession on their common law claim, the district court denied McElroy summary judgment. *Schoene v. McElroy Coal Co.*, No. 5:13-CV-95, 2016 WL 397636, at *3 & n.5 (N.D. W. Va. Jan. 29, 2016). The court first observed that the parties could not "stipulate to legal principles which the Court believe[d] to be erroneous," such as whether the waiver provision was valid. *Id.* at *3 n.5. It then recognized that although West Virginia law allows parties to waive the right to support, state law also indicated that the language must demonstrate the "clear intent[] by the surface owner to waive such support." *Id.* at *4. Distilling these broader contract principles, the district court held that a waiver of support is not enforceable unless the party invoking it shows "that the mining [that causes damage] takes place by mining methods that were contemplated by the parties at the time of the severance." *Id.* at *5. It then cited various industry and related authorities discussing longwall mining techniques and concluded that this modern form of mining—which "provides almost a certainty of significant subsidence and the loss of all natural water sources"—"could not have possibly been contemplated by the parties to the 1902 deed at issue." *Id.* at *6. In so doing, the court distinguished or deemed not convincing several cases applying West Virginia law, each of which had found similar turn-of-the-century waiver provisions to be enforceable and thus to bar common law claims for support. The district court noted that

6

those cases failed to address the principles—or pre-dated the cases—upon which it relied. *Id.* at \*7–8.

Based on this holding, the common law and statutory claims proceeded to trial.[2] The jury found that McElroy caused the value of the Schoenes' residence to be diminished from $184,000 to $90,000; the cost to repair the residence to be $350,000; the cost to repair the land to be $172,000; and the appropriate compensation for the Schoenes' "annoyance, inconvenience, aggravation and loss of use" to be $25,000.

Following trial, the district court entered judgment in the combined amount of $547,000 (the same amount being awarded for both the common law and statutory claims), reflecting the $350,000 to repair the residence, $172,000 to repair the real property, and $25,000 for other compensatory damages. *See* Judgment Order, at \*3, *Schoene v. McElroy Coal Co.*, No. 5:13-CV-95 (Mar. 16, 2016), ECF No. 102. In so doing, the district court rejected two additional arguments by McElroy. First, the court held that it could award damages for the statutory claim and was not limited to awarding injunctive relief. *Id.* at \*2–3. Second, it observed that section 38-2-16.2.c.2 of West Virginia's Code of State Rules was silent as to which party makes the election of remedies (damages equal to the diminution in value to the residence or damages equal to the amount of repair), and it concluded that leaving the decision to the coal mine operator was contrary to the purpose of the Act. *Id.* at \*3. The district court noted that McElroy's

---

[2] The specific evidence of damages adduced at trial is not pertinent to the legal questions challenged on appeal.

7

position would "allow the operator to pick the option which is the cheaper to the company and thus the more unfair to the surface owner," insomuch as the regulation is entitled "Surface Owner Protection." *Id.*; *accord Schoene v. McElroy Coal Co.*, No. 5:13-CV-95, 2016 WL 6788391, at *2 (N.D. W. Va. June 9, 2016) (denying defendants' motion to alter or amend). The court then "interpret[ed] this section as providing for the repair of the damage to the extent that it is reasonable and feasible with the diminution in value award to the extent that the damage cannot reasonably be repaired." *Schoene*, 2016 WL 6788391, at *2.

In a motion to alter or amend the judgment, McElroy made one additional argument pertinent to the appeal: that the damages for annoyance, inconvenience, aggravation, or loss of use were not authorized on the Schoenes' statutory claim. In ruling against McElroy, the district court observed that "[d]amages under W. Va. Code § 22-3-25 are not limited in any respect," and that this type of damages was appropriate "to ensure that [the Schoenes were] fully compensated for their loss." *Id.* at *3–4.

McElroy noted a timely appeal.

## II. Parties' Contentions

### A.

On appeal, McElroy continues to assert that the terms of the 1902 deed should bar the Schoenes' common law claim, while the Schoenes urge us to apply the district court's rationale. Because there are no recent authoritative cases directly on point, the arguments of both parties may have some merit. As McElroy contends, several Supreme Court of

8

Appeals of West Virginia decisions tend to support the validity of the waiver given its language contemplating the transfer of all rights to the coal "without liability for *any* support" to the surface estate. J.A. 121 (emphasis added.); *see, e.g.*, *Rose v. Oneida Coal Co.*, 375 S.E.2d 814 (W. Va. 1988); *Cont'l Coal Co. v. Connellsville By-Product Coal Co.*, 138 S.E. 737 (W. Va. 1927); *Griffin v. Fairmont Coal Co.*, 53 S.E. 24 (W. Va. 1905). Relying on these cases, numerous state and federal courts have enforced these provisions, contrary to the district court's solitary decision. *See, e.g.*, *Schultz v. Consolidation Coal Co.*, 475 S.E.2d 467, 475–76 (W. Va. 1996); *Smerdell v. Consolidation Coal Co.*, 806 F. Supp. 1278, 1282 (N.D. W. Va. 1992); *Sendro v. Consolidation Coal Co.*, Civ. A. No. 89-0009-W(S), 1991 WL 757723, at *4 (N.D. W. Va. Mar. 27, 1991).

Conversely, the Schoenes point us to—and the district court relied on—decisions of the Supreme Court of Appeals of West Virginia that require courts to interpret contractual language with a view to the intent of the parties at the time the agreement was made. Where subsequent changes—whether they arise in the form of statutory rights or the scope of damages resulting from mining—could not have been contemplated by the parties at the time of the original agreement, West Virginia courts have refused to enforce certain contractual provisions as broadly as their plain language would appear to suggest. *See, e.g.*, *Cogar v. Sommerville*, 379 S.E.2d 764, 768–69 (W. Va. 1989) (denying enforcement of waiver provision contained in deed where it was inconsistent with newly-enacted statutory right); *Brown v. Crozer Coal & Land Co.*, 107 S.E.2d 777 (W. Va. 1959) (holding invalid a waiver executed before the advent of the "auger method";

9

reasoning that damage caused by the auger method of mining was not within the reasonable contemplation of the parties at the time they executed the waiver); *W. Va.-Pittsburgh Coal Co. v. Strong*, 42 S.E.2d 46, 49 (W. Va. 1947) (same with respect to strip mining). This line of cases may call into question the continued validity of a broad waiver of rights clause. That said, these cases could be distinguishable from the issue raised in this case, which implicates not just the continued validity of older case law, but also involves a circumstance that—while perhaps more likely to occur under longwall mining techniques than other techniques—could nonetheless still have been within the parties' contemplation at the time the agreement was made.

Given that this issue presents both a novel question concerning how West Virginia would reconcile these principles and an interpretation that could influence the future rights of other parties under similar deeds, we believe it appropriate and best that the issue be decided by the Supreme Court of Appeals of West Virginia.

B.

If the deed waiver does not bar the Schoenes' common law claim, that determination resolves the case: the district court awarded the same damages for both the common law and statutory claims. Moreover, McElroy does not dispute the nature or scope of the common law damages award directly, only the viability of the Schoenes' common law claim. If, however, the waiver provision in the deed bars the Schoenes' common law claim, then they would be entitled to recovery only insofar as that recovery is authorized by the Act.

10

McElroy makes three basic arguments regarding the appropriate relief available under the Act. First, it contends that the Schoenes were only entitled to compel compliance with McElroy's obligations under the Act and, thus, were limited to injunctive relief. This is so, McElroy asserts, because the Act does not allow citizen suits for damages unless there is a violation of the statute, and it is not a violation of the statute to cause subsidence. Second, McElroy maintains that even if damages are available to the Schoenes under the Act, those damages are limited to the diminution in value of the property, not the cost of repair and remediation. McElroy contends the district court should not have awarded damages in the amount of what it would cost to repair the property, nor should it have awarded $25,000 in damages for inconvenience, annoyance, loss of use, and the like because the statute does not contemplate such relief. Third, McElroy contends that the district court erred in rejecting its argument that the coal mine operator has the right to make the election between the two remedies for subsidence damage to surface lands set out in the applicable West Virginia regulations. Those regulations require a coal mine operator who causes subsidence to surface lands to "[e]ither correct material damage . . . or compensate the owner of such structures or facilities in the full amount of the diminution in value resulting from the subsidence." W. Va. Code R. § 38-2-16.2.c.2. The regulations are silent, however, on who gets to elect the remedy. McElroy maintains that this silence, coupled with interpretive guidance of similar federal regulations, reflect that it, as the coal mine operator, is the party entitled to make the election. *See* W. Va. Code R. § 38-2-16.2.c.1 & c.2.

11

The Schoenes' arguments track the district court's rationale. They observe that the Act permits injured persons to bring "an action for damages," and assert that their claim qualifies because they have been injured as a result of McElroy's coal mining operations. Further, the Schoenes contend that the Act does not limit what type of damages can be recovered in such an action, so all the damages the district court awarded were proper under the Act. Lastly, they contend the district court appropriately resolved an ambiguity arising from the regulation's silence as to which party makes the election between the available forms of relief when the parties disagree regarding the means of settlement.

There is no controlling appellate decision or other guidance to answer these questions of state statutory and regulatory interpretation. Moreover, McElroy raises issues that are not clearly answered in the text of the relevant provisions. Accordingly, we believe the questions are appropriate for certification and best decided by the Supreme Court of Appeals of West Virginia as issues solely of West Virginia law.

### III. Conclusion & Certification Information

Resolving the issues on appeal would require us to speculate how the Supreme Court of Appeals of West Virginia would apply competing principles of case law and how it would interpret West Virginia statutory and regulatory provisions that are silent on the disputed issues in this case. We respectfully believe these matters are best resolved by the state court.

12

Pursuant to West Virginia Code § 51-1A-6(a)(3), we acknowledge that the Supreme Court of Appeals of West Virginia may reformulate the questions of law proposed in this order. *See* W. Va. Code § 51-1A-6(a)(3).

The names and addresses of the counsel of record are:

| For the Defendant-Appellant: | For Plaintiffs-Appellees: |
| --- | --- |
| Rodger L. Puz | James G. Bordas, Jr. |
| J.R. Hall | Jeremy M. McGraw |
| Dickie, McCamey & Chilcote, P.C. | Bordas & Bordas, PLLC |
| Two PPG Place, Suite 400 | 1358 National Road |
| Pittsburg, PA 15222 | Wheeling, WV 26003 |

Pursuant to the applicable provisions of West Virginia law, we ORDER: that the questions of law set out in this order be certified to the Supreme Court of Appeals of West Virginia for answer. We DIRECT the Clerk of Court to transmit to the Supreme Court of Appeals of West Virginia, under the official seal of this Court, a copy of this Order of Certification. And we further DIRECT the Clerk of Court to forward the original or copies of the record before this Court, either in whole or in part, as requested by the Supreme Court of Appeals of West Virginia. Any and all such requests shall be effective upon notification by ordinary means from the Clerk of the Supreme Court of Appeals of West Virginia.

This order of certification is entered with the concurrences of Judge Keenan and Judge Harris.

QUESTIONS CERTIFIED