**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1788**

MICHAEL SCHOENE; PATRICIA SCHOENE,

Plaintiffs – Appellees,

v.

MCELROY COAL COMPANY,

Defendant – Appellant

and

CONSOL ENERGY, INCORPORATED; CONSOL
ENERGY COMPANY,

Defendants.

---------------------------------------

THE WEST VIRGINIA COAL ASSOCIATION (WVCA),

Amicus Curiae.

Appeal from the United States District Court for the Northern District of West Virginia,
at Wheeling.  John Preston Bailey, District Judge.  (5:13-cv-00095-JPB)

Argued:  May 11, 2017                                    Decided:  June 29, 2018

Before AGEE, KEENAN, and HARRIS, Circuit Judges.

Reversed in part, vacated in part, and remanded with instructions by unpublished opinion. Judge Agee wrote the opinion, in which Judge Keenan and Judge Harris joined.

---

**ARGUED:** Rodger L. Puz, DICKIE, MCCAMEY & CHILCOTE, P.C., Pittsburgh, Pennsylvania, for Appellant. Jeremy Matthew McGraw, BORDAS & BORDAS, PLLC, Moundsville, West Virginia, for Appellees. **ON BRIEF:** J.R. Hall, DICKIE, MCCAMEY & CHILCOTE, P.C., Pittsburgh, Pennsylvania, for Appellant. James G. Bordas, Jr., BORDAS & BORDAS, PLLC, Wheeling, West Virginia, for Appellees. J. Thomas Lane, Charleston, West Virginia, Carrie J. Lilly, BOWLES RICE LLP, Morgantown, West Virginia, for Amicus Curiae.

---

Unpublished opinions are not binding precedent in this circuit.

AGEE, Circuit Judge:

McElroy Coal Company ("McElroy") appeals the judgment of the district court in favor of Michael and Patricia Schoene on their common law and statutory claims seeking damages for injury to their land and residence caused by McElroy's mining activities. To assist our resolution of McElroy's appeal, we certified four questions to the Supreme Court of Appeals of West Virginia ("SCAWV"). *Schoene v. McElroy Coal Co.*, 705 F. App'x 145 (4th Cir. 2017). The SCAWV has answered those questions, and its answers require that we reverse the district court's judgment as to the common law claim and vacate and remand the judgment as to the statutory claim. *See generally McElroy Coal Co. v. Schoene*, 813 S.E.2d 128 (W. Va. 2018).

I.

This case stems from subsidence damage to the surface estate and residence of the Schoenes, which occurred after McElroy engaged in authorized longwall mining of the subsurface estate in 2012. The Schoenes filed a complaint in West Virginia state court alleging a common law claim for loss of support to the surface estate. McElroy removed the case to the United States District Court for the Northern District of West Virginia, where the Schoenes amended their complaint to add a statutory claim[1] under the West Virginia Surface Coal Mining and Reclamation Act, W. Va. Code § 22-3-1 *et seq.*.[2]

---

[1] While we use the shorthand "statutory claim" to refer to the claim the Schoenes brought under this state statute, as our discussion of that claim reveals, it is more appropriately understood as a claim based on both statutory provisions of the Act and regulations (Continued)

3

McElroy moved for partial summary judgment, alleging that a waiver clause contained in the 1902 deed to the Schoenes' property precluded relief on the common law claim and that the Act did not authorize all the relief the Schoenes sought as to the statutory claim. The Schoenes conceded the waiver provision barred their common law claim, but they defended their ability to obtain relief on the statutory claim. Notwithstanding the Schoenes' concession, the district court denied McElroy summary judgment on the common law claim, holding that the waiver provision in the deed was unenforceable against a claim of subsidence damage arising from longwall mining activity. *See Schoene v. McElroy Coal Co.*, No. 5:13-CV-00095-JPB, 2016 WL 397636, at *3–5 & n.5 (N.D. W. Va. Jan. 29, 2016). In light of that holding, the district court also rejected McElroy's arguments concerning the scope of relief available to the Schoenes. *Id.* at *8.

Both claims proceeded to trial, where the parties presented evidence limited to the issue of quantifying the Schoenes' damages from McElroy's mining activities. The jury found that McElroy caused the value of the Schoenes' residence to be diminished from $184,000 to $90,000; that the cost to repair the residence was $350,000; that the cost to repair the land was $172,000; and that the appropriate compensation for the Schoenes'

---

implementing the Act. At times, including a dispositive issue on appeal, this distinction in the source of law matters. This opinion uses "the Act" to refer to the entire body of West Virginia law in this field.

[2] The Schoenes also brought a claim under the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 *et seq.*, but this federal claim merged with the state requirements governing the Schoenes' claims. *See* 30 U.S.C. § 1255; *see also infra* Section II.B.

4

"annoyance, inconvenience, aggravation, and/or loss of use" was $25,000. The district court entered judgment on both claims in the amount of $547,000, which reflected $350,000 to repair the residence, $172,000 to repair the land, and $25,000 in compensatory damages. *See* Judgment Order 1–3, No. 5:13-CV-00095-JPB (Mar. 16, 2016), ECF No. 102.

McElroy noted a timely appeal, and we have jurisdiction under 28 U.S.C. § 1291.


## II.

Where, as here, the Court exercises diversity jurisdiction over state law claims, West Virginia law applies. *See K & D Holdings, LLC v. Equitrans, L.P.*, 812 F.3d 333, 338 (4th Cir. 2015). But the proper interpretations of contracts and statutes are questions of law that the Court reviews de novo. *See Hosh v. Lucero*, 680 F.3d 375, 378 (4th Cir. 2012) (statutes); *Scarborough v. Ridgeway*, 726 F.2d 132, 135 (4th Cir. 1984) (contracts).

### A. Common Law Claim

West Virginia recognizes a common law claim for subsidence damage caused by coal mining. *Winnings v. Wilpen Coal Co.*, 59 S.E.2d 655, 658 (W. Va. 1950). But West Virginia courts will also enforce an agreement in which parties clearly intend to waive liability for damage from subsidence. *Rose v. Oneida Coal Co.*, 375 S.E.2d 814, 816 (W. Va. 1988).

The 1902 deed for the real property at issue in this case severed the coal rights (now owned by McElroy) from the rest of the estate (now owned by the Schoenes). The deed specifically states that the transferred coal rights include: "the right [to mine the

5

land] without leaving any support for the overlying stratas and without liability for any injury which may result to the surface from the breaking of said strata." J.A. 121.

McElroy asserted in the district court and on appeal that this provision was enforceable under West Virginia law and barred the Schoenes from pursuing their common law claim because it waived their right to "any" surface support. Noting some tension in West Virginia case law concerning the enforcement of older deeds when damage resulted from modern mining techniques, we certified the following question to the SCAWV:

> Under West Virginia law, does a deed provision (1902) transferring the right to mine coal "without leaving any support for the overlying stratas and without liability for any injury which may result to the surface from the breaking of said strata," J.A. 121, prohibit a surface estate owner from pursuing a common law claim for loss of support arising from subsidence caused by the extraction of coal from below the surface?

705 F. App'x at 146; *see also id.* at 149–50.

The SCAWV answered that question in the affirmative. 813 S.E.2d at 135–39. At the outset, the court acknowledged West Virginia's common law claim for subjacent support and a land owner's ability to waive that right. *Id.* at 135. Then, the court concluded that the waiver provision in the 1902 deed "expressly and unambiguously grants to the coal owner or lessee the right to mine the coal underneath the Schoenes' surface estate without leaving 'any' surface support and without common law liability for 'any' injury caused to the surface as a result of the mining." *Id.* at 136. Lastly, the SCAWV distinguished the cases the district court relied on to hold that the waiver was unenforceable, explaining that

6

[t]hose cases reject the notion of implying a right to *directly* destroy the surface in a manner not contemplated by typical mining methods. In contrast, the issue in this case is the express waiver of damages for loss of surface support, which is a natural incident of any underground mining regardless of the methodology.

*Id.* at 139.

In view of the SCAWV's answer to our certified question, the district court erred in allowing the Schoenes' common law claim to proceed. The waiver provision in the deed is enforceable under West Virginia law and prohibits the Schoenes from pursuing a common law claim for damages. We therefore reverse the district court and instruct it to enter final judgment on this claim in favor of McElroy.

## B. Statutory Claim

Our resolution of the common law claim leaves only the question of the Schoenes' right to relief under the Act. When Congress enacted the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 *et seq.*, it endeavored to "strike a balance between the nation's interests in protecting the environment from the adverse effects of surface coal mining and in assuring the coal supply essential to the nation's energy requirements." *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 288 (4th Cir. 2001). But this federal law operates through cooperative federalism, in which states can enact their own laws consistent with or more strict than federal law. *Id.* at 297. When a state enacts such laws, the state law becomes the "exclusive" source of surface mining regulation within the state. *Id.*; *see also* 30 U.S.C. § 1255. West Virginia has enacted its own provisions regulating mining activity in the Act, which creates a right to relief for injuries to the

surface estate even where a landowner cannot pursue a common law claim against the coal mine operator.[3]

Three provisions of West Virginia law are relevant to this case—one based in statute and two in derivative regulations.[4] West Virginia Code § 22-3-25(f) provides that "[a]ny person or property who is injured through the violation by any [coal mine] operator of any rule, order or permit issued pursuant to [the Act] may bring an action for damages, including reasonable attorney and expert witness fees." W. Va. Code § 22-3-25(f). In addition, regulations enacted pursuant to the Act provide that coal mine operators must "[c]orrect any material damage resulting from subsidence caused to surface lands, to the extent technologically and economically feasible, by restoring the land to a condition capable of maintaining the value and reasonably foreseeable uses which it was capable of supporting before subsidence." W. Va. Code R. § 38-2-16.2.c.1. Coal mine operators are also required to "[e]ither correct material damage resulting from subsidence caused to any structures or facilities by repairing the damage or compensate the owner of such structures or facilities in the full amount of the diminution in value resulting from the subsidence." W. Va. Code R. § 38-2-16.2.c.2.

Relying on these three provisions, the Schoenes brought a claim under the Act alleging that McElroy: was "in violation of a rule, order, or permit issued pursuant to" the

---

[3] As the SCAWV noted, the Act's reference to "surface mining" is inconsequential because the Act encompasses "surface impacts incident to an underground coal mine, and areas where such activities disturb the natural land surface." 813 S.E.2d at 140 (internal quotation marks omitted).

[4] As described by the SCAWV, these regulations are "legislative rules" which, having been "proposed by an agency and approved by the Legislature," have the "force and effect of law." 813 S.E.2d at 142 (internal quotation marks omitted).

Act; "did not adopt measures consistent with known technology to prevent subsidence from causing material damage to the extent technologically and economically feasible, to maximize mine stability, to maintain the value and reasonably foreseeable use of surface lands"; "did not adopt mining technology which provided for planned subsidence in a predictable and controlled manner"; had "not corrected the material damage resulting from subsidence caused to the [Schoenes'] surface lands and ha[d] not restored the land to a condition capable of maintaining the value and reasonably foreseeable uses which it was capable of supporting before subsidence"; and had "not corrected the material damage resulting from subsidence cause[d] to the [Schoenes'] structures and facilities by repairing the damage or by compensating the [Schoenes]." J.A. 17–18.

At trial, the parties' evidence addressed the types and amount of damages the Schoenes had suffered as a result of McElroy's mining activities. Consistent with this narrow focus, the questions submitted to the jury addressed only causation, valuation of loss, cost of repairs, and calculation of other damages. Consequently, the jury made no findings about whether the evidence satisfied the elements of a claim under either the statute or regulations.

In the district court proceedings, McElroy argued that the Schoenes' statutory right to relief was limited in the following ways:

- The Act did not authorize any form of damages and thus limited injured parties to injunctive relief;

- Even if the Act did authorize damages, it did not authorize damages for loss of use or annoyance and inconvenience; and,

9

- The coal mine operator rather than the surface estate owner is entitled to elect the remedy (correction or compensation) for injury to a residence (W. Va. Code R. § 38.2.–16.2.c.2).

The district court rejected these arguments, and McElroy reasserted its challenges to the Schoenes' statutory claim for damages on appeal. Given the paucity of case law interpreting the Act and the nature of the issues presented in this case, we certified the following questions related to this claim to the SCAWV:

- Assuming the surface lands and residence of a landowner have been materially damaged from subsidence, does [the Act] authorize an action against the coal mine operator for the damage so arising; or, are landowners only permitted to seek injunctive relief compelling compliance with the Act's provisions? *Compare* W. Va. Code § 22-3-25(a), *with id.* § 22-3-25(f);

- (a) If the Act permits a suit for damages, what is the proper measure of damages? Specifically, is a landowner permitted to recover only the diminution in value to the property arising from the subsidence, or can the property owner alternatively recover damages in an amount equal to the cost to repair the property?;

  (b) Additionally, if the Act permits a suit for damages, can those damages include compensation for "annoyance, inconvenience, aggravation and/or loss of use"?; and

- Lastly, the regulations issued under the Act provide that when a coal mine operator causes subsidence damage to the "structures or facilities," the operator must either correct it or "compensate the owner . . . in the full amount of the diminution in value" as a result of the mining. *See* W. Va. Code R. § 38-2-16.2.c.2; *see also id.* § 38-2-16.2.c.1. The regulations, however, do not designate which party gets to make this election between remedies if the parties fail to reach an agreement. Between the landowner and the coal mine operator, who elects the appropriate remedy and what standards govern that decision?

705 F. App'x at 146–47.

The SCAWV's answers to these questions demonstrate that the relief to which a plaintiff is entitled under the Act depends on a threshold determination that was not part of the district court's adjudication of the Schoenes' statutory claim. In brief, the SCAWV distinguished between the relief available under the regulations and under the statute, and held that different relief is available based on the type of claim. Based on this guidance from the SCAWV, we conclude that the most prudent course is to vacate the district court's judgment with respect to this claim and remand for further proceedings so that the district court can consider the threshold matters in the first instance. Although the district court has the SCAWV's decision to guide its review, we will briefly address the disconnect between what occurred in the district court proceedings and what the SCAWV stated are the requirements to be met for relief under the Act. We must also resolve an unanswered issue following certification.

1. Relief Available Under West Virginia Code of State Rules § 38-2-16.2.c

The SCAWV held that a plaintiff who can prove that his "surface lands and residence . . . have been materially damaged from subsidence that is a natural result of underground mining," is entitled to the relief set out in West Virginia Code of State Rules § 38-2-16.2.c–c.2. 813 S.E.2d at 142. As noted, these regulations require a coal mine operator "to correct any material damage resulting from subsidence caused to surface lands, to the extent technologically and economically feasible." W. Va. Code R. § 38-2-16.2.c.1. Further, the regulations "require the coal operator to either correct material damage resulting from subsidence caused to any structures or facilities by repairing the damage or compensate the owner of such structures or facilities in the full amount of the

11

diminution in value resulting from the subsidence." W. Va. Code R. § 38-2-16.2.c.2. Critically, the SCAWV recognized that a plaintiff's right to relief under these regulations does *not* depend on his first establishing a violation of a rule, order, or permit issued under the Act. 813 S.E.2d at 142 ("We emphasize that the coal operator must perform these requirements even if there is no proven violation of a rule, order, or permit issued pursuant to the Coal Mining Act."). In sum, assuming the Schoenes proved "material damage" to their lands and residence from subsidence as a result of McElroy's mining activity, they would be entitled only to the relief specified in the regulations, but not to any other relief. *See* 813 S.E.2d at 142.

The SCAWV's analysis does not directly address part of our second certified question, which related to a principal issue McElroy raised in this appeal: does the Act allow a plaintiff to recover damages or is he limited to injunctive relief? *See* 813 S.E.2d at 146–52 (Workman, C.J., dissenting in part and concurring in part) (discussing this omission and offering her view); *id.* at 152–54 (Walker, J., concurring in part and dissenting in part) (same). Nonetheless, we believe the SCAWV's silence is itself instructive, as it answered our second certified question as follows: "assuming the surface lands and residence of a landowner have been materially damaged from subsidence that is a natural result of underground mining, the surface owner is *limited to the remedies provided for* in the" regulations. 813 S.E.2d at 142 (emphasis added). The regulations require the coal mine operator to "[c]orrect . . . by restoring" surface lands, W. Va. Code R. § 38-2-16.2.c.1, and to "[e]ither correct . . . by repairing . . . or compensate . . . in the

12

full amount of the diminution in value" of "any structures or facilities," *id.* § 38-2-16.2.c.2.

The SCAWV's emphasis that a plaintiff relying solely on the regulations is limited to the "remedies" available under the regulations indicates that such a plaintiff is limited to compelling compliance, but not necessarily limited to injunctive relief. That is to say, a plaintiff who proves material damage to surface lands could obtain a court order requiring correction of the surface lands and a plaintiff who proves material damage to a residence could obtain a court order requiring either correction of the damage to the residence or compensation for diminution in value to structures or facilities.[5] In practical effect, the court order may require a coal mine operator to pay money—"damages"—to the surface estate owner, but those "damages" are limited to achieving the operator's compliance with the regulations. In this regard, we agree with Justice Workman's observation in her concurring opinion that the relief provided under the regulations is "available not as 'damages' in an action under the statute; it is a remedy available by

---

[5] Our fourth certified question asked the SCAWV to resolve an ambiguity in the second regulation at issue concerning which party makes the election between correction or compensation where the parties do not reach an agreement. 705 F. App'x at 146–47. The SCAWV answered that

> the surface owner elects whether the coal operator will correct material damage resulting from subsidence to any of the surface owner's structures or facilities by repairing the damage, or by compensating the owner of the structures or facilities in the full amount of the diminution in value caused by the subsidence.

813 S.E.2d at 145.

*operation of law*." 813 S.E.2d at 149 (Workman, J., dissenting in part and concurring in part).[6]

Our conclusion regarding what relief is authorized under the regulations is reinforced by the SCAWV's answer to our third certified question, which asked the court to clarify what damages are recoverable under the Act. In answering this question, the SCAWV focused exclusively on West Virginia Code § 22-3-25(f)'s cause of action, and it did not reference a coal mine operator's obligations under the regulations. 813 S.E.2d at 142–44.

### 2. Relief Available Under West Virginia Code § 22-3-25(f)

Turning to the SCAWV's substantive answer to our third certified question concerning the availability of damages in a claim brought under the Act, the SCAWV answered that West Virginia Code § 22-3-25(f) allows recovery of "damages" *only* when a person or property has been "injured through the violation . . . of any rule, order or permit" issued under the Act. *Id.* at 143 (internal quotation marks omitted). The court acknowledged that the statute does not specify what "damages" are permitted upon proving liability, and it clarified that the "common, ordinary and accepted meaning"

---

[6] Even though our certified question squarely referenced two types of citizen suits authorized by statute, the SCAWV did not discuss whether the relief available in a citizen suit to "compel compliance" with the Act under West Virginia Code § 22-3-25(a) might differ from the relief available in a citizen suit for "damages" due to a violation of a rule, order, or permit issued under the Act based on West Virginia Code § 22-3-25(f). But whatever differences may lie, the SCAWV has now stated that to obtain the relief under the regulations, a plaintiff does not need to prove a violation of a rule, order, or permit. 813 S.E.2d at 142. We adhere to this view of a regulation-based claim despite West Virginia Code § 22-3-25(a)(1)'s language indicating that a suit to compel compliance must also allege that the defendant is "in violation of any rule, order or permit issued" under the Act. *See* 813 S.E.2d at 152–53 (Walker, J., concurring in part and dissenting in part).

14

applies to the term. *Id.* at 143. Accordingly, the SCAWV explained that a plaintiff who proves a violation under this statute can receive monetary compensation, including compensation for loss of use of the property as well as damages for annoyance, inconvenience, and aggravation "resulting from the violation." *Id.* at 144.

### 3. Application

In light of the SCAWV's responses, whether the district court's damages award is sustainable depends on an initial determination about the basis for McElroy's liability. To obtain relief under the *regulations*, the Schoenes needed to prove only that McElroy's mining activities caused subsidence that materially damaged their land or residence. And to obtain "damages" under the *statute*, the Schoenes needed to prove McElroy violated a "rule, order or permit" issued under the Act. But neither the jury instructions nor any of the specific questions posed to the jury required any findings as to these threshold issues. In other words, there has been no finding that the elements of a claim under either the statute or the regulations have been proven. Instead, the jury only made a broad finding as to causation and then valued certain aspects of the Schoenes' injuries. J.A. 538–39; *see also* Jury Instructions 8–12, No. 5:13-CV-00095-JPB (Mar. 9, 2016), ECF No. 94. The jury's findings are only relevant after the basis for McElroy's liability is determined. Before turning to proof of causation and damages, the district court must resolve whether the Schoenes have proven they are entitled to relief under the statute or the regulations.[7]

---

[7] To be sure, as the district court repeatedly observed, McElroy has never denied that its actions led to *some* subsidence damage on the Schoenes' property. But for the reasons set out by the SCAWV and above, that's not enough to establish a claim. The regulations require *material*
(Continued)

Only when the basis for the Schoenes' claim has been proven can the court identify the scope of the relief available to the Schoenes.

McElroy contends in its brief to this Court that the Schoenes never alleged a violation of a rule, permit, or order. But it appears on the face of the amended complaint that the Schoenes did allege such a violation, J.A. 18 (alleging a "violation of a rule, order, or permit" issued under the Act), though by trial the issue centered on quantifying the Schoenes' injuries rather than any threshold issues of liability. It is not readily apparent from the record before us who bears responsibility for this shift, but it seems to have resulted at least in part from two legal errors committed by the district court.

The first error has already been discussed: the district court determined that the Schoenes' common law claim could proceed alongside the statutory claim. *See* 2016 WL 397363, at *8 (rejecting McElroy's arguments as to the scope of available damages based on the denial of summary judgment as to the common law claim); J.A. 564 (observing in response to McElroy's statutory arguments that regardless of the merits of that analysis, "all of the damages [the Schoenes sought and recovered were] appropriate under a common law action"). Of course, that view can no longer support the judgment, making it essential to determine the nature of the Schoenes' claim brought under the Act, the

---

damage before entitling the property owner to relief. The statute requires something else entirely to establish liability: proof of a violation of a rule, or, or permit. The district court did not follow this framework to ensure the Schoenes had established liability in the first instance either under the regulations or the statute.

specific basis for liability alleged, and the damages asserted as arising from those alleged acts in order to determine what relief may be appropriate.

That necessity brings us to the district court's second error: it misunderstood what the Schoenes had to prove in order to be entitled to certain relief as part of this claim. In short, the district court improperly allowed the jury to consider all of the damages the Schoenes sought without first determining the nature of McElroy's conduct. *See* Jury Instructions 8–12, *Schoene v. McElroy Coal Co.*, No. 5:13-CV-00095-JPB (Mar. 9, 2016), ECF No. 94, at 8–12.[8]

Because there has never been a clear finding on the threshold issue of whether McElroy violated a rule, order, or permit under the Act, we cannot reach the issue of what relief the Schoenes may have been entitled to or, in turn, the appropriateness of the damages award. As such, we vacate the judgment with respect to this claim and remand for the district court for further proceedings consistent with this opinion and that of the SCAWV.

---

[8] In their brief to this Court and the SCAWV, the Schoenes asserted that McElroy violated a rule, order or permit under the Act by "dragging its feet and obstructing the compensation process for nearly three years." 813 S.E.2d at 141; *see also* Response Br. 38. McElroy argues that this fact "standing alone" could not constitute a violation. Reply Br. 18. It appears that the district court allowed the Schoenes to present evidence about McElroy's alleged slow responsiveness to their demands for restoration of their property and residence. But the court never ruled on whether this evidence either could, as a matter of law, or did, as a matter of fact, establish a violation of a rule, permit, or order issued under the Act. We decline to delve into this question in the first instance.

17

## III.

For the reasons set out above, the judgment of the district court is

*REVERSED IN PART, VACATED IN PART,*
*AND REMANDED WITH INSTRUCTIONS.*